FILED
99 MAR -3 AM 8:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GARY MERTZ, DEBORAH }
TURNER, WESLEY SIMMONS, }
　}
Plaintiffs, }
　}
v. } CASE NO. CV 96-B-1208-S
　}
TREETOP ENTERPRISES, INC., }
　}
Defendant. }

**ENTERED**
MAR 03 1999

### MEMORANDUM OPINION

This matter is before the court on the Motion of the plaintiffs to proceed as a collective action under 29 U.S.C. § 216(b) and the plaintiffs' Motion to Reconsider the denial of the Motion to Amend the Complaint. Upon consideration of the Memoranda in support of and in opposition to the Motion, the argument of counsel and the relevant law, the court is of the opinion that both Motions are due to be denied.

<u>Findings of Fact</u>

1.　This is an action brought by three plaintiffs, Gary Mertz, Deborah Turner and Wesley Simmons against Treetop, on behalf of themselves and others similarly situated pursuant to § 16(b) of the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 216(b)).

2.　The named representative plaintiffs reside in the greater Birmingham, Alabama area, and each of them formerly were employed as hourly employees of the defendant Treetop.

3.　Treetop is a Tennessee corporation engaged in business as a franchisee of Waffle House, Inc. As a franchisee, Treetop has the right to own and operate Waffle House restaurants in a portion of the states of Kentucky, Alabama, Mississippi, and Tennessee.

4. Treetop, for all periods relevant to this action, is an employer within the meaning of 29 U.S.C. § 203(d). Treetop is an enterprise engaged in commerce, or in the production of goods for commerce, within the meaning of 29 U.S.C. § 203(r) and § 203(s)(1) and otherwise subject to the applicable provisions of the Act for the statutory period relevant hereto.

5. The representative plaintiffs, while employed by Treetop, served in the non-exempt employment position of either grill operator (cook) and/or server (waitress) during their entire period of employment. The representative plaintiffs were hourly employees.

6. The representative plaintiffs allege that while employed by the defendant they received no compensation for work performed, were improperly paid, and/or were not paid for overtime compensation to which they were entitled.

7. By Order of the court entered December 18, 1996, a procedure for giving notice to potential opt-in plaintiffs was authorized and on or about January 21, 1997, counsel for the plaintiffs mailed out approximately 19,000 court approved notices and consents to present and past employees of the defendant Treetop.

8. 872 individuals returned consents which were filed with the court. On April 23, 1997, the putative opt-in plaintiffs were ordered to respond to a series of interrogatories submitted by the defendant on or before June 23, 1997. On June 27, 1997, the court entered an Order striking the consents of those putative opt-ins plaintiffs who did not respond to the interrogatories, which reduced the number of opt-ins to 549. The June 27, 1997, Order further granted plaintiffs until July 28, 1997, to clarify the responses to the interrogatories they had submitted. On July 28, 1997, the court entered an Order further reducing the number of putative opt-in plaintiffs to 535, based on the responses to the interrogatories filed.

9. The putative opt-in plaintiffs remaining in the case were employed as hourly, non-exempt, non-management employees as either grill operators (cooks) and/or sales persons (waitresses) in the restaurant units owned and operated by Treetop in Alabama, Mississippi, and Tennessee. At the time of the filing of the lawsuit, Treetop operated approximately 90 such Waffle House restaurants throughout Alabama, Mississippi, and Tennessee.

10. Treetop is divided into three operational areas and subdivided into several operational divisions in those areas which are in turn subdivided into numerous multi-unit districts. The organizational structure of Treetop changes from time to time, for instance, new units are added or pre-existing units are re-assigned to different districts or divisions. When these changes occur, new districts or divisions may be created and pre-existing districts or divisions may be eliminated. Treetop has gone through several such organizational structural changes during the last several years.

11. One unit manager is assigned to each restaurant unit in each district. This individual unit manager, under Treetop's Policy and Procedures, is responsible for hiring, training, disciplining, and firing of employees, as well as setting the work schedules for the hourly employees. The unit manager is responsible for answering employee questions concerning Treetop's pay policies and resolving payroll related problems for hourly employees. The individual unit manager assigned to each unit is charged with the responsibility in that unit of insuring that payroll and record keeping are in compliance with the FLSA. Although Treetop has enacted uniform pay policies applicable to all hourly employees, each unit manager is afforded a certain amount of discretion in administering these policies within his or her area of responsibility.

12. The representative plaintiffs and the putative opt-in plaintiffs were supervised by

3

numerous different unit managers during their employment with Treetop throughout the states of Alabama, Mississippi, and Tennessee in the various restaurant units where they were employed.

13. Treetop, for the relevant period in question, had a large turnover in its management personnel, particularly at the level of unit manager.

14. Plaintiffs allege the violations of the FLSA by Treetop were implemented by the unit manager at the restaurant unit where the hourly employees were employed. Plaintiffs allege the supervisors to whom a unit manager reports were aware of these alleged illegal employment practices and did not prohibit such practices. Treetop has denied the existence of any illegal employment practices and further has denied that any of its supervisory management personnel had knowledge of, participated in, or condoned any illegal employment practices.

15. Plaintiffs submitted no evidence in support of their allegation of supervisory management's knowledge of any illegal employment practices or of any practice or pattern of illegal employment practices within Treetop.

## Conclusions of Law

1. 29 U.S.C. § 216(b) provides the procedures for representative or class actions. It permits representative actions only where additional individuals are "similarly situated." The FLSA establishes two prerequisites for participation in a private representative suit: (1) The filing of a consent to become a party and (2) a finding that the putative plaintiffs are "similarly situated" to the initial plaintiff(s). Neither statutory requirement can be judicially waived. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989); *Severtson v. Phillips Beverage Co.*, 137 F.R.D 264, 265-266 (D. Minn.1991). After *Hoffman-LaRoche*, district courts have applied this two stage analysis in §216(b) cases to determine whether additional persons wishing to participate

are in fact "similarly situated." The initial consideration for the court is whether a court approved notice should be sent to potential plaintiffs. At that stage the plaintiff has only to show a colorable basis for a representative suit. Courts have described this initial burden as "not a difficult one to establish." *Bayles v. American Medical Response of Colorado*, 950 F. Supp. 1053, 1066 (D. Col. 1996).

2. The second stage of the analysis follows completion of the notice phase. This is sometimes referred to as a "certification" hearing. At the certification stage the district court must evaluate the claims of the putative plaintiffs, consider contradictory evidence, and make appropriate findings of fact as to whether any "opt-in" plaintiffs are similarly situated. *Severton v. Phillips Beverage Co.*, 141 F.R.D. 276, 279 (D. Minn 1992); *see Hoffman-LaRoche,* 493 U.S. at 173. This two stage analysis has been adopted by this court in the case of *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D 562, 566 (N.D. Ala. 1995). This court in *Brooks* held that the second step in the §216(b) representative process usually occurs after all persons have filed consents and discovery concerning the various allegations of potential class members have been taken. *Id.* at 566. The court will then determine whether the case should proceed as a collective action. *Id.* In *Brooks*, this court refused to certify an ADEA collective action where discovery revealed the putative class was comprised of individuals in nine states, located under separate departments, with different supervisors of the defendant employer. *Id.* at 569. The court held where it is clear that the claims of the proposed opt-in plaintiffs would present disparate factual and employment settings, certification should be denied. *Id.*

3. The factual circumstances of the putative opt-in plaintiffs in this case is similar to the opt-in plaintiffs in *Brooks* and in the other cases cited therein. In this case, the named

5

plaintiffs who reside in the greater Birmingham area, seek to represent individuals who worked in a multi-state geographical area, in different operational divisions of the defendant, in separate restaurant facilities, at different times, reporting directly to and under the direct supervision of numerous different unit managers assigned to each restaurant unit, who were each individually responsible for the implementation of appropriate management policies, practices, and procedures and were individually responsible to insure each hourly employee was compensated in accordance with the FLSA.

4.  The plaintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that similarly situated individuals exist in the broad class that they propose. *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). Plaintiffs must satisfy the standards set forth in *Grayson v. K-Mart*, 79 F.3d 1086 (11th Cir. 1996) by demonstrating a reasonable basis to support assertions of class wide violations. If the plaintiffs are not similarly situated, the district court does not certify the class and the opt-in plaintiffs are dismissed without prejudice. *Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995).

5.  The plaintiffs have failed to demonstrate that they are similarly situated to the putative opt-in plaintiffs and further have failed to demonstrate any practice or pattern of class wide violation of the FLSA by the defendant.

6.  Plaintiffs' Motion to Reconsider the denial of plaintiffs' Motion to Amend the Complaint and Motion to Proceed as a Collective Action are due to be denied. The claims of the opt-in plaintiffs are due to be dismissed without prejudice.

An Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** this 2nd day of March, 1999.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge